The next matter, number 221192, United States v. John Michael Rathbun. At this time, would the appellant's counsel please introduce herself on the record to begin? Good morning, Your Honors. May it please the Court, Judith Meisner representing Mr. Rathbun. May I reserve two minutes for rebuttal? Yes, you may, Ms. Meisner. Thank you. John Rathbun was tried twice on charges arising from the discovery of a fuel container with gasoline and a charred paper wick on the grass near a driveway entrance to the Jewish Geriatric Services Campus on Converse Street in Longmeadow, Massachusetts, on the morning of April 2, 2020. The wick was pages from a religious tract published by the Billy Graham Evangelistic Association. There was a hung jury for the first trial. Mr. Rathbun was convicted at the second trial. Now, while there were government insinuations of anti-Semitism from the outset of the case, there was no evidence of it. The government initially obtained an indictment with a special finding that Mr. Rathbun intentionally selected Jewish Geriatric Services as the object of the offenses because of actual or perceived religious identity. The government dismissed that special finding before trial, before the first trial, admitting that it had no evidence linking Mr. Rathbun to any online anti-Semitic activity and no evidence of any sort linking him to anti-Semitic activity or expression. Notwithstanding the absence of any evidence that the offenses were motivated by anti-Semitism or any religious bias, that theme permeated the government's case. The combined impact of the testimony from two witnesses... Well, did the theme of bias permeate the case or did the theme of the facts of what they are? The device was found where it was found and the fuel container was stuffed with what it was stuffed. That's information that's just part of the factual scenario of the crime. Yes, Your Honor. It is part of the factual scenario of the crime, but the question is the emphasis that the government placed upon it and the need for the more extensive testimony provided. Ms. Meisner, from your answer, I assume that you're referring to the closing arguments rather than the admission of the evidence. Could you clarify exactly what your point is? I'm talking about the admission of the evidence, the testimony of Chaim Kosofsky. Okay, so how is it an abuse of discretion to pick up Judge Thompson's point to introduce that factual evidence? The evidence that Chaim Kosofsky was called for, according to the government, was to provide information about the population in the area. And he lived across the street from the driveway entrance to the Jewish geriatric service campus. The population and the activity, he was way more specific than the other testifying witnesses about what kind of daily activity occurred in that area, way more so than the other witnesses who testified. But that testimony was available from other witnesses. But the government doesn't have to skip calling the one witness who's across the street just because of the religion that that witness practices. Suggesting that in this particular case, the need for him to testify was outweighed by the other witnesses. The risk of prejudice from the fact that he was a rabbi, he testified about his teaching at a Jewish school, providing services to people at the Jewish geriatric service complex, and the... Well, that just gave context as to why he was in that area. But there were other people in that area as well. The woman who reported seeing the container lived in that area. No, it's because in this particular case, there was a potential for prejudice from the testimony of the rabbi that didn't exist. If you had testimony from other witnesses who were not Jewish. It's a case-specific argument. It's not saying that Jewish people cannot ever testify if they live in an area. But here, because of... Did you offer to, I'm sorry, your appellate counsel, did the trial defense counsel offer to stipulate that the witness who lived across the street would testify as he did? I'm sorry, Your Honor, that Chaim Kasofsky would testify? Chaim should have called the other witnesses instead of the rabbi. Yes. And you have been told, well, the government is not precluded from calling witnesses because of the religion of that witness. And it strikes me that defense counsel could have stipulated to what the testimony was from the occupant of the house directly across the street from where the firebomb Molotov cocktail was located. There was no such offer, am I correct? There was no stipulation, but that testimony similar to what he offered had already been introduced. You had a patrol officer who, for nine months, patrolled that area, the midnight to eight shift, which would be the time frame that is being discussed here. And there could have been, if the government felt a need for additional evidence about the nature of the area or the population, that witness could have been examined more fully. Had the government not called him, I could just imagine a closing argument by defense counsel saying that here the person who would have been in the best position to observe what was going on in the area, the guy who lived right across the street, the government with the burden of proof, didn't even bother to call him. Well, there was no argument that the government didn't call the witness who actually observed the can and called it in, who lived in the neighborhood. Couldn't that argument I just said be made by defense counsel in closing? Had they not called that witness? Sure. He could have made that argument. Well, then how can we say the government couldn't call the witness and then be vulnerable to that argument in closing? Because the court could have said you cannot make that argument. There was no suggestion that the defense counsel was going to make that argument. I think if the judge had said that, we'd have a pretty good brief from you explaining why that's cutting off a legitimate defense argument. No, because that would have been part of the 403 balancing in excluding the testimony of Mr. Kasofsky. And isn't this a 403 issue? It is a 403 issue. And I'm arguing that the potential for prejudice from the testimony of the rabbi far outweighs... But what I don't understand is, I'm trying to get a grip on what prejudice you're saying. You're saying that it's not because he's a rabbi and you're saying it's not because of the information that was offered. What are you saying constituted the prejudice other than those two things? In this case, it is because of the overtones of anti-Semitism from the beginning of this case. But from the beginning of the case, I think you have to segregate what happened at this particular trial. Because the government conceded it didn't have evidence of anti-Semitic bias. And it seems from the record before us that it greatly limited the kinds of evidence that it tried to put in. And the court further limited the evidence that was allowed in on that issue. And further greatly restricted the testimony of the witnesses about any kind of religious considerations. So what are you saying went over the top other than he was a rabbi? And I gather from your brief you didn't like the way he was dressed. When he first appeared he was wearing a yarmulke and I believe he took that off when he testified. But it is in this case the fact that the government consistently pointed to the religious aspects of this case. And yes, they are the facts. It was a Christian religious tract. It was Jewish geriatric services. And of course the government is not precluded from presenting those facts. But it's a question of emphasis. Do you really need to have a rabbi testify about traffic patterns when you have other witnesses who did testify to that? And additional witnesses who could have been called to testify about that? Ms. Meisner, even if your argument does not work as a stand-alone argument, I thought you were saying it was the cumulative effect of this, plus the fact that the papers that were stuffed into the firebomb were Christian papers. They were built from a booklet from a Billy Graham special pamphlet that had been circulated at the church where the defendant's parents were. Actually, Your Honor, the pamphlet was not circulated at the defendant's parents' church. The pamphlet was provided to Billy Graham Evangelistic Association, held an event in Springfield, Massachusetts in 2019. The pamphlet that was stuffed into the WIC was provided to volunteers and counselors at a training session prior to the main event. There was no evidence that Mr. or Mrs. Rathbun attended that event or ever received that pamphlet. That pamphlet was not available at the main event. It was not mailed to people on the mailing list. And Mrs. Rathbun testified that she had never seen it until the FBI showed her a copy when they came to search the house. Now, the government has suggested that the jury could disregard Mrs. Rathbun's denials and draw the opposite conclusion. But I cited a number of cases in the reply brief that you cannot simply draw the opposite conclusion from the rejection of testimony. You're left with a void. So there was no evidence that this pamphlet had ever been in the Rathbun house for Mr. or for John Rathbun to obtain it to use as a WIC. Yes, I'm saying that there's no evidence that the pamphlet came from his mother's house. The relevance of the... Well, I mean, suppose it was a flyer from Verizon that was in it and the evidence and his mother worked for Verizon. But she wouldn't admit she actually saw that flyer while she was at Verizon, but the testimony showed Verizon made the flyer. Certainly the government could put all that into evidence and let the jury infer that it was reasonably possible that he had access to that through his mother. Well, again, it's a question of balancing here, given the religious overtones to this case. The Billy Graham... If this pamphlet is relevant, it's to interstate commerce, which they had other evidence of, or to his identity. And if the pamphlet was not available from his mother's house and there were many other places that this pamphlet could have come from, including another church, then the relevance of the testimony is counterbalanced by the potential for prejudice discussing the Christian nature and the purpose of Billy Graham's meetings. Thank you, Ms. Meisner. May it please the court, Randall Crum on behalf of the government. Thank you. Thank you, Ms. Meisner. Thank you. Thank you, Mr. Kazofsky, who testified as to facts about the facility that he knew well as the person who lived across the street. And as this court has acknowledged, had particularly in-depth knowledge about as a person who lived closest to where it occurred. Not only that, he had lived there for 11 years and regularly walked that very street, sidewalk, with his wife in the early morning hours. Therefore, very reasonable for the government to call that witness as being the most credible, knowledgeable person with respect to the particulars of what was going on. On that morning, the traffic that would have existed, foot traffic, the kinds of things that people would have been doing. So, again, and no real effort has been made to show that those facts were not important facts, relevant facts, that he did not have relevant knowledge as to those facts. And then the final point is that in an attempt in their opening brief to sort of draw them together, they rely on questions about statements at argument. But that argument appears to be withdrawn in the reply brief, and the defendant appears to not be arguing anymore that there was a separate argument. And even if they were, that's not synergistic with these other points because the government did not, in its closing or opening arguments, emphasize that Mr. Kazofsky was a rabbi or that he had pastoral duties. It did not emphasize the religious nature of the tracts. It merely recited the facts of the case. So that even if it could be any sort of error and it wasn't objected to, and we don't believe it was, it would be not synergistic with or would not in any way heighten the effect of the alleged other errors, which, as we've pointed out, weren't errors in any event, but also weren't what were picked up in the arguments that they're complaining of. There was also a question with respect to 404B information, evidence, and I'm willing to address that if the court has any questions about it, as well as the first issue. But if the court doesn't, we will rely on our briefs with respect to that matter, and ask that the court affirm. Thank you. Thank you, Counsel. At this time, Attorney Meisner, you have a two-minute rebuttal. Thank you. First, there was no evidence that the pamphlets were in Ms. Rathburn's church. They were distributed at a training held by the Billy Graham Association, not at the church. There was no evidence that they were present at the Springfield main event. And in terms of the testimony from Ms. Rathburn's church, there was no evidence that the pamphlets were in Ms. Rathburn's church. There was no evidence from Rabbi Kosofsky about traffic patterns, and the fact that he lived there for 11 years is not really relevant, because the issue is not what was traffic like 11 years before this event, but what was traffic like around the time of the event. And for that, you also had the patrol officer who did the midnight to 8 shift in that area, and was familiar with the, at that time frame, during that time frame, and therefore was equally familiar with traffic patterns. We're not arguing that the government's juxtaposition of the Jewish geriatric center and the Christian tract in opening and closing is separately an error, but rather that it is evidence of the prejudice, it evidences the prejudice from the religious focus. The court, in one of its orders addressing one of the motions in limine, recognized that there was a great risk of prejudice and confusion of issues posed by evidence suggestive of religious bias. So it's in the case from the beginning, and it's not harmless error. The issue was identity. You had the first trial. The first trial had all of the DNA evidence, the daughter and his mother's testimony about his behavior, the phone record evidence, the test drive from Jewish geriatric services to Springfield, the Billy Graham testimony about the tract, his statements, and yet you had a hung jury. What did you have in the second trial that was added? You had Rabbi Kosofsky, and you had from the motel incident, which we did not have a chance to address, but is in the brief, a discussion in the brief, about the motel incident with his drug use and irrational behavior. So for those reasons, we suggest that the conviction should be vacated. Thank you, Ms. Meisner.